DUANE W. LARSON AND PAMELA A. LARSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Larson v. Commissioner
Docket No. 44303-85
United States Tax Court
T.C. Memo 1993-188; 1993 Tax Ct. Memo LEXIS 191; 65 T.C.M. (CCH) 2527; April 27, 1993, Filed *191 An appropriate order will be issued denying both parties' motions for summary judgment. Duane W. Larson and Pamela A. Larson, pro se. For respondent: Jay M. Erickson. GERBER
GERBER
MEMORANDUM OPINION GERBER, Judge: Respondent moved for partial summary judgment seeking to establish petitioners' understatement of income tax liabilities in the amounts asserted in a prior criminal proceeding. Petitioners, in turn, deny that respondent is entitled to partial summary judgment, and they also made a cross-motion for summary judgment regarding four aspects of this case. [1]
*192 Respondent's motion is based solely [2] upon the doctrine of judicial estoppel as explained and followed by this Court in Huddleston v. Commissioner, 100 T.C.     (1993). We hold that the circumstances of this case are not appropriate for use of judicial estoppel. During 1985, Duane W. Larson (petitioner) was indicted for violations of section 7201[3] for the taxable years 1978, 1979, and 1980. He pled guilty to a section 7201 violation for 1979 only. As part of the plea agreement, petitioner agreed that "As part of the plea, the * * * [petitioner] will concede the *193 accuracy of the criminal tax computations for the years 1978, 1979 and 1980 (Counts I, II and III)." On August 19, 1985, at a U.S. District Court hearing on petitioner's plea agreement with the Government, the following questions and testimony (under oath) were exchanged between petitioner and Assistant U.S. Attorney Richard E. Vosepka: MR. VOSEPKA: Do you understand that, as part of the plea, you are conceding the accuracy of our criminal tax computations -- I say "ours," the government's -- for the years 1978, '79 and '80? DEFENDANT LARSON: Yes. MR. VOSEPKA: All right. And with that, let me mention those specific figures. The government's criminal tax computations, as we would intend to prove in the trial, would show that: For the year 1978, you had at least $ 34,487.23 in tax which you owed, but which you did not declare and pay. Do you concede that that *194 is, at least, an accurate figure; at a minimum, is an accurate figure? DEFENDANT LARSON: Yes. MR. VOSEPKA: Now, for 1979, the government would contend and would seek to prove that you had a hundred fifty-eight thousand eight hundred thirty-nine dollars and ninety-seven cents in taxes which were due and owing by you, but which you did not declare or pay? * * * MR. VOSEPKA: * * * Now, with regard to 1979, the figure that I just mentioned was a hundred fifty-eight thousand eight hundred thirty-nine dollars and ninety-seven cents. Do you concede that that is at least the figure of income tax due and owing by you which you did not declare or pay for that year? DEFENDANT LARSON: Yes. MR. VOSEPKA: Now, for 1980, the figure, which the government would intend to prove, is $ 125,168.18. Do you concede that that is at least the minimum figure of tax due and owing, federal tax due and owing for the year 1980 which you did not declare and did not pay? DEFENDANT LARSON: Yes.
The plea agreement also provided that petitioner reserved the right to present any information to respondent as part of settling his civil liabilities for the years under indictment. Also at that same hearing, *195 in response to questions by the judge, petitioner testified that he did not declare as much income as he had for 1979 and that he attempted to evade or defeat his income tax for that year. The doctrine of judicial estoppel "prevents parties in subsequent judicial proceedings from asserting positions contradictory to those they previously have affirmatively persuaded a court to accept." Huddleston v. Commissioner, 100 T.C.    ,     (1993) (slip op. at 15), and cases cited therein. Judicial estoppel focuses on the relationship between the court and a party and should be "applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." (Fn. ref. omitted.) Teledyne Industries, Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990). The doctrine of judicial estoppel, unlike collateral estoppel, is discretionary with the court because the purpose of judicial estoppel is to preserve the integrity of the courts by preventing abuse of the judicial process. See Huddleston v. Commissioner, supra at     (slip op. at 15), *196 and cases cited therein; Teledyne Industries, Inc. v. NLRB, supra at 1217. We do not see the need nor do we feel compelled to employ the doctrine of judicial estoppel in the setting of this case. Here, respondent is attempting to establish petitioners' tax liability without the opportunity of trial or contradiction by petitioners. Petitioners may attempt to collaterally attack the criminal judgment and underlying proceeding. For example, petitioners assert in their cross-motion for summary judgment that the plea agreement and criminal judgment of conviction were obtained by coercion or duress. The use of judicial estoppel, if appropriate in this case, would be better employed in the face of a change of position by petitioners. In that regard, we are not certain that petitioner's responses to the assistant U.S. attorney and District Court judge would, for purposes of judicial estoppel, constitute his "position" in that proceeding. Nor do we think that there was a judicial acceptance of these responses, in the sense required to raise a judicial estoppel, since the precise amount of the underpayment was not an element of the criminal case, so *197 long as the District Court judge was satisfied that petitioner's liability for unpaid tax for 1979 was substantial. We also note that petitioner's testimony under oath may well be available to respondent for purposes of impeachment during cross-examination to deter petitioner from contradicting prior statements to the court. See Fed. R. Evid. 801(d)(1)(A). Additionally, petitioner's testimony may also constitute an admission within the meaning of rule 801(d)(2) of the Federal Rules of Evidence. Accordingly, it appears that the integrity of the judicial process can be adequately addressed by other more appropriate means during any further proceedings in this case. For these reasons, respondent's motion for partial summary judgment will be denied. Petitioners' cross-motion for summary judgment involves four separate aspects. After a review of each of the four aspects, it is clear that none of them is ripe for summary judgment. Rule 121(b) provides that a motion for summary judgment shall be granted if the pleadings and admissions show that there is no genuine issue of material fact and that a decision may be rendered as a matter of law. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). *198 The moving party bears the burden of proving that there is no genuine issue of material fact. Marshall v. Commissioner, 85 T.C. 267, 271 (1985). The facts are viewed in a light most favorable to the nonmoving party. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). With these principles in mind, we discuss each of the four aspects advanced by petitioners for summary judgment. First, petitioners assert that respondent's reconstruction of their income for 1978 through 1980 by means of the net worth method is invalid for lack of an accurate starting point. This aspect involves consideration of a purely factual matter which, based upon petitioners' allegation, will involve a dispute about material facts. Summary judgment is not appropriate for this aspect. Second, petitioners make the assertion that there is "no substantive or supportive evidence for" respondent's determination of deficiencies in the notice of deficiency. In other words, petitioners argue that respondent's determination is arbitrary and capricious. Petitioners do not, in any way, explain the basis for their argument, but attack by means of a generality. *199 The notice of deficiency (which consists of more than 40 pages, including specific schedules) contains a lengthy and highly detailed explanation of the recomputation of income by means of the net worth method. Without further explanation from petitioners, it is not possible to decide whether this is one of those rare occasions where we will look behind the notice of deficiency and require a showing by respondent. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974); Jackson v. Commissioner, 73 T.C. 394, 400-401 (1979). Accordingly, this issue is not ripe for summary judgment. The third aspect of petitioners' summary judgment cross-motion is described as "reasonable cause", and it relates to whether petitioners were fraudulent within the meaning of section 6653(b) for the 1978 and 1980 taxable years. On that issue respondent bears the burden of proof. See sec. 7454(a); Rule 142(b). Petitioners' explanation regarding that issue, at this juncture in the proceeding, is premature and not ripe for summary judgment. Finally, petitioners attempt to collaterally attack the guilty plea for the 1979 taxable year *200 in an attempt to avoid the application of collateral estoppel regarding the addition to tax under section 6653(b). Petitioners argue that the plea was not voluntarily given and, accordingly, is not effective for estoppel purposes. This position raises a material factual question which is clearly in dispute between the parties. Therefore, this aspect of petitioners' cross-motion is not ripe for summary judgment. In view of the foregoing, petitioners' cross-motion for summary judgment will also be denied. To reflect the foregoing, An appropriate order will be issued denying both parties' motions for summary judgment.
Footnotes
1. The four aspects concern: (1) Whether the starting point of respondent's net worth computations is accurately established; (2) whether the notice of deficiency is "naked" and respondent's determination is entitled to the presumption of correctness; (3) whether respondent can meet the burden of proving fraud by clear and convincing evidence; and (4) whether Duane W. Larson's plea of guilty for 1979 was "involuntarily coerced" and thereby inadequate to support respondent's claim of collateral estoppel.↩
2. Collateral estoppel is a matter which must be affirmatively raised, and for unexpressed reasons, respondent has chosen to seek partial summary judgment relying solely upon judicial estoppel. Although we reach no conclusion here about the applicability of the doctrine of collateral estoppel regarding the 1979 or the 1978 and 1980 tax years, we do not intend to preempt or preclude the use of any affirmative defense available to the parties.↩
3. Section references are to the Internal Revenue Code. Rule references are to this Court's Rules of Practice and Procedure, unless otherwise indicated.↩